UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ABDOREZA E. NIKTAB,                          Case No. 3:13-cv-00586-HA

        Plaintiff,                          OPINION AND ORDER

   v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

---

HAGGERTY, District Judge:

    Plaintiff Abdoreza Niktab seeks judicial review of a final decision by the Acting Commissioner of the Social Security Administration denying his application for Disability Insurance Benefits (DIB).  This court has jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).  After reviewing the record, this court concludes that the Acting Commissioner's decision must be affirmed.

1 - OPINION AND ORDER

**STANDARDS**

A claimant is considered "disabled" under the Social Security Act if: (1) he or she is unable to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Hill v. Astrue,* 688 F.3d 1144, 1149-50 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)); 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a). In steps one through four, the Commissioner must determine whether the claimant (1) has not engaged in SGA since his or her alleged disability onset date; (2) suffers from severe physical or mental impairments; (3) has severe impairments that meet or medically equal any of the listed impairments that automatically qualify as disabilities under the Social Security Act; and (4) has a residual functional capacity (RFC) that prevents the claimant from performing his or her past relevant work. *Id.* An RFC is the most an individual can do in a work setting despite the total limiting effects of all his or her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and Social Security Ruling (SSR) 96-8p. The claimant bears the burden of proof in the first four steps to establish his or her disability.

At the fifth step, however, the burden shifts to the Commissioner to show that jobs exist

in a significant number in the national economy that the claimant can perform given his or her

RFC, age, education, and work experience. *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir. 1996).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of

awarding benefits. 20 C.F.R. §§ 404.1520(f)(1), 416.920(a).  On the other hand, if the

Commissioner can meet its burden, the claimant is deemed to be not disabled for purposes of

determining benefits eligibility.  *Id.*

   The Commissioner's decision must be affirmed if it is based on the proper legal standards

and its findings are supported by substantial evidence in the record as a whole.  42 U.S.C. §

405(g); *Tackett*, 180 F.3d at 1097; *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

Substantial evidence is more than a scintilla but less than a preponderance; it is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Sandgathe v.

Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).

   When reviewing the decision, the court must weigh all of the evidence, whether it

supports or detracts from the Commissioner's decision.  *Tackett*, 180 F.3d at 1098.  The

Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the

Commissioner's decision must be upheld in instances where the evidence supports either

outcome.  *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998).  If, however, the

Commissioner did not apply the proper legal standards in weighing the evidence and making the

decision, the decision must be set aside.  *Id.* at 720.

## FACTUAL AND PROCEDURAL HISTORY

   Plaintiff was born on February 22, 1957 and worked as a manager of a lodging facility

until February 5, 2011.  Plaintiff protectively filed his application for DIB on February 22, 2011,

3 - OPINION AND ORDER

alleging that he has been disabled since February 5, 2011. The claim was denied initially on May

13, 2011, and upon reconsideration on July 12, 2011. At plaintiff's request, an Administrative

Law Judge (ALJ) conducted a hearing on January 9, 2012. The ALJ heard testimony from

plaintiff, who was represented by counsel, as well as an independent vocational expert (VE).

On January 27, 2012, the ALJ issued a decision finding that plaintiff was not disabled

under the Social Security Act. At step one of the sequential analysis, the ALJ found that plaintiff

had not engaged in SGA since February 5, 2011, the alleged disability onset date. Tr. 16,

Finding 1.[1] At step two, the ALJ found that plaintiff suffers from the following medically

determinable severe impairments: muscle disorders and back disorders. Tr. 16, Finding 3. After

considering plaintiff's severe and non-severe impairments, the ALJ determined that plaintiff does

not have an impairment or combination of impairments that meets or equals a listed impairment

in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 17, Finding 4. After consulting the record,

the ALJ concluded that plaintiff has the RFC to perform the full range of light, semiskilled work

as defined in 20 C.F.R. 404.1567(b), but such work could not require:

> Lifting more than 7-10 pounds at a time, primarily with the right upper extremity
> (claimant is right handed), on more than a "less than occasional" basis;
>
> Lifting and carrying lighter articles, primarily with the right upper extremity,
> weighing more than 7-10 pounds, on more than an "occasional" basis (which
> means from very little up to 1/3 of the day);
>
> Standing or walking more than 15-20 minutes at one time, nor more than six total
> hours in an 8-hour day;
>
> Sitting more than 60 minutes at one time, nor more than six total hours in an 8-
> hour day;

---

[1] "Tr." refers to the Transcript of the Administrative Record.

Bending, twisting or squatting on more than a "less than occasional" basis;

Stooping on more than an "occasional" basis;

Work on the floor (e.g. kneeling, crawling or crouching) on more than a "less than occasional" basis;

Climbing or descending flights of stairs (but a few stairs up or down not precluded);

Left upper extremity overhead lifting or overhead reaching more than a "less than occasional" basis;

More than frequent left upper extremity reaching, handling and fingering; and

More than occasional left upper extremity pushing, pulling, gripping and grasping; with a requirement that he not handle breakable items on the job.

Tr. 17-18, Finding 5.  The ALJ found that, at all times relevant to this decision, the claimant has been unable to perform any past relevant work.  Tr. 22, Finding 6.  Based on plaintiff's age, the ALJ found that he was an individual closely approaching advanced age on the alleged disability onset date.  Tr. 22, Finding 7.  Considering plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform.  Tr. 22-24, Finding 10.  Therefore, the ALJ concluded that plaintiff is not disabled.  Tr. 24, Finding 11.  The Appeals Council denied plaintiff's request for administrative review, making the ALJ's decision the final decision of the Acting Commissioner.  Plaintiff subsequently initiated this action seeking judicial review.

**DISCUSSION**

Plaintiff asserts that the ALJ erred by (1) failing to provide any explanation for her adverse determination at step three of the sequential analysis; (2) finding plaintiff's symptom

testimony not fully credible; (3) affording little weight to the testimony of treating physician

Jodie Levitt, M.D and treating physicians' assistant Melinda Roalstad; (4) relying on VE

testimony that diverged from the Dictionary of Occupational Title (DOT) without adequate

explanation; and (5) using the medical vocational guidelines to deny his claim. The court will

address each argument in turn.

### 1.   Step Three Analysis

Plaintiff argues that the ALJ failed to adequately explain her conclusion that the effects of

plaintiff's impairments do not meet or equal any of those listed in 20 C.F.R. § Part 404, Subpart

P, Appendix 1. In particular, plaintiff argues that his impairments satisfy section 1.04 of the

listings, which concerns disorders of the spine. According to plaintiff, the ALJ concluded that

plaintiff's impairments did not meet the listing requirements without providing any analysis.

However, the ALJ explained that the medical evidence does not support a finding that plaintiff's

impairments meet the listing requirements. She supported this conclusion with the opinions of

two state agency medical consultants who each found that it was necessary to access plaintiff's

RFC in order to make a disability determination - not that plaintiff's impairments satisfied section

1.04.

Plaintiff argues that his impairments meet every element of listing 1.04. Section 1.04

requires that, among other things, the medical record contain evidence of limitation of motion of

the spine. While plaintiff directs the court to a portion of the record that shows plaintiff's

shoulder has a limited range of motion due to neurologic changes in the spine, plaintiff fails to

demonstrate any limitation of motion in the spine itself. Therefore, plaintiff fails to satisfy each

element in section 1.04 of the listing. Because plaintiff fails to show that section 1.04 is

satisfied, the court finds it reasonable for the ALJ to rely on the opinions of medical experts to

conclude that the criteria of the listings have not been met. Therefore, the ALJ did not err at step

three of the sequential analysis.

### 2.    Plaintiff's Credibility

Plaintiff argues that the ALJ erred in rejecting plaintiff's testimony and statements about

his impairments and their limiting effects. The ALJ found plaintiff credible to the extent that he

would experience some exertional, postural, and manipulative limitations, and she reduced his

RFC to accommodate those limitations. However, the ALJ found that plaintiff's allegations that

he is incapable of all work activity were not fully credible.

As an initial matter, the parties disagree regarding the applicable standard of review for

the ALJ's factual finding concerning the credibility of plaintiff's symptom testimony. The Ninth

Circuit has made clear that, in the absence of evidence showing that the claimant is malingering,

it is the Commissioner's burden to articulate "clear and convincing" reasons to reject a claimant's

subjective pain testimony. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citing *Lester v.*

*Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). Because there is no evidence of malingering in this

case, the court will analyze the credibility finding using the "clear and convincing" standard. A

discrepancy between objective medical evidence and subjective pain complaints is a relevant

factor, but can never be the sole determinative factor in assessing credibility. *Id.*

Plaintiff argues that, in making her credibility determination, the ALJ relied solely on

general findings, which are insufficient to undermine plaintiff's subjective complaints. However,

the ALJ's rejection of plaintiff's testimony was partial and far less expansive than plaintiff

suggests. In fact, the ALJ found plaintiff fully credible as to his exertional, postural, and

manipulative limitations and reduced his RFC accordingly.  The ALJ found plaintiff incredible only to the extent that he testified that he was incapable of all work activity.

In so doing, the ALJ provided several clear and convincing reasons.  First, and most significantly, the ALJ found that an incapacity to do all work is inconsistent with the fact that plaintiff predominantly attributes his inability to work to pain in his left upper extremity and plaintiff is right handed.  "The medical record does not indicate or suggest disabling pain when the left upper extremity is at rest or used only minimally."  Tr. 18.  Accordingly, the RFC significantly limited plaintiff's use of his left upper extremity, but such limited use of the area in which plaintiff experiences pain does not necessitate a finding of disability.  Plaintiff argues that the majority of upper extremity limitations were imposed on plaintiff's right upper extremity, but this is a misinterpretation of the RFC.  The RFC limits *any* lifting to primarily plaintiff's right hand, the amount of which is also limited.

Second, the ALJ noted individual medical records that contradicted plaintiff's testimony of his complete inability to work.  She noted that plaintiff's grip strength, even with his left arm, was solid.  Tr. 19.  Additionally, she noted that plaintiff made progress through medication and physical therapy, which increased his bicep and tricep strength, improved his muscular endurance overall, and decreased his level of pain enabling him to sleep through the night.  Tr. 19.

Third, the ALJ found that plaintiff's daily activities are inconsistent with his testimony that his pain prevents all work activity.  As the ALJ noted, plaintiff independently cares for himself, performs household chores, such as loading and unloading the dishwasher, prepares meals, does the laundry, shops, walks outside everyday, goes on drives, and visits with friends. Tr. 20.  This court finds that such daily activity is inconsistent with plaintiff's testimony

regarding complete disability. *Renaud v. Apfel*, 243 F.3d 549 (9th Cir. 2000) (finding that a claim of total disability is inconsistent with daily activities that include half-mile walks, grocery shopping, washing dishes, taking out the trash, occasionally cleaning the house and attending church).

In sum, the ALJ explained that plaintiff's testimony was inconsistent with the objective medical evidence and evidence of his ability to conduct daily activities. The court finds these reasons clear and convincing; therefore, the ALJ did not err in partially rejecting plaintiff's testimony.

### 3.   Opinions of Jodie Levitt, M.D. and Melinda Roalstad, PA-C

Plaintiff argues that the ALJ erred in partially rejecting the opinions of treating physician Jodie Levitt, M.D. and treating physicians' assistant Melinda Roalstad. In a "fill in the blank" type form, Dr. Levitt opined that plaintiff was unable to use his left arm and work due to continuous pain. The medical opinion of plaintiff's treating physician can be rejected only for specific and legitimate reasons when contradicted by a non-treating doctor. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The ALJ explained that the medical evidence indicates that plaintiff's pain and limitations are experienced predominantly in his left arm, while plaintiff is right-handed. Therefore, the ALJ found that the record is inconsistent with Dr. Levitt's opinion that plaintiff is unable to work completely. Furthermore, the ALJ found that Dr. Levitt's opinion was brief and conclusory, consisting of little more than check boxes. Tr. 20 (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).[2] This court agrees that Dr. Levitt's

---

[2]Plaintiff argues that the ALJ improperly relied on precedent outside the Ninth Circuit. This court finds that argument unpersuasive because the Ninth Circuit has similarly held that "[a]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and

opinion was unsupported by any clinical analysis. Therefore, the ALJ provided specific and legitimate reasons for partially rejecting Dr. Levitt's opinion.

Melinda Roalstad opined that plaintiff's chronic pain and numbness in his left arm prevent him from working in any occupation. Additionally, she opined that plaintiff is able to perform a desk job for 20 hours per week, but is unable to perform full-time work. As a physicians' assistant, Ms. Roalstad is not an "acceptable medical source" under the regulations. 20 C.F.R. § 404.1513(a). Still, the regulations allow the consideration of a physicians' assistant's opinion as an "other source." 20. C.F.R. § 404.1513(d). An ALJ may disregard the testimony of an "other source" if the ALJ provides reasons germane to each witness for doing so. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th cir. 2001)). The ALJ partially rejected Ms. Roalstad's opinion because it was brief and conclusory. Much like Dr. Levitt, above, Ms. Roalstad's opinion were set forth in a checkbox form, offering no clinical support. Therefore, the ALJ did not err in limiting the weight afforded to Ms. Roalstad's opinion.

### 4.    Reliance on Testimony of the Vocational Expert

Plaintiff argues that the ALJ erred by relying on the testimony of the VE, which diverged from the Dictionary of Occupational Titles without sufficient explanation. The ALJ found that plaintiff cannot lift more than 7-10 pounds at a time on more than a "less than occasional" basis. Plaintiff asserts that this limitation precludes plaintiff's performance of light level jobs, which require the lifting of 10 pounds frequently and 20 pounds occasionally. Nevertheless, the ALJ

---

inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

relied on the testimony of the VE, who identified light level jobs that plaintiff could perform.

Plaintiff argues that the VE did not provide adequate explanation for this divergence from the

Dictionary of Occupational Titles.

However, the VE did explain that the elements of the ALJ's hypothetical are not

contained in the Dictionary of Occupational Titles. She explained that she based her testimony

on her "understanding of these jobs, [her] understanding of the essential elements of the work –

employer tolerances, with respect to the issues." Tr. 82. Moreover, the VE significantly reduced

the number of jobs in the national economy to reflect all of the hypothetical limitations in

plaintiff's RFC. She reduced the 45,000 Office Helper jobs by 40 percent; the 30,000 Parking

Lot Attendant jobs by 30 percent; and the 20,000 Storage Rental Clerk jobs by 40 percent. Tr.

23. The ALJ may rely on the testimony of a VE "even if it is inconsistent with the job

descriptions set forth in the Dictionary." *Johnson v. Shalala*, 60 F.3d 1428, 1435. The role of a

VE is to translate facts into realistic job market probabilities. Therefore, it was appropriate for

the ALJ to rely on expert testimony to find that plaintiff could perform the three job types,

regardless of their classification by the Dictionary of Occupational Titles as "light." *Id.* at 1436

(citing *Sample v. Schweiker*, 694 F.2d 639, 643 (9th Cir. 1982))

     **5.**     **Medical-Vocational Rule 202.15**

Plaintiff argues that the ALJ erred in making an alternative finding at step five that

plaintiff is not disabled pursuant to Medical-Vocational Rule 202.15. Because the court finds no

error in the ALJ's primary decision, it need not address what plaintiff has described as an

alternative finding.

///

11 - OPINION AND ORDER

**CONCLUSION**

Based upon the record, the court finds that the decision of the Acting Commissioner is based upon the correct legal standards and is supported by substantial evidence in the record. The final decision of the Acting Commissioner denying plaintiff Abdoreza E. Niktab's application for Disability Insurance Benefits is AFFIRMED.

IT IS SO ORDERED.

DATED this _30_ day of April, 2014.

Ancer L. Haggerty
United States District Judge